FILED
U.S. DISTRICT COURT

2006 SEP -6  A 10: 21

**In the United States District Court**
**for the District of Utah, Central Division**

DISTRICT OF UTAH

DEPUTY CLERK

| | |
|---|---|
| RICHARD A. BROWN,<br><br>       Plaintiff,<br><br>  vs.<br><br>JO ANNE B. BARNHART, Commissioner of<br>Social Security,<br><br>       Defendant. | **ORDER**<br><br>Case No. 1:02 CV 88 JTG |

      Plaintiff Richard A. Brown brought this action pursuant to 42 U.S.C. § 405(g)

seeking judicial review of the Commissioner of Social Security's decision denying his

application for disability benefits.  The Court referred the matter to Magistrate Judge Nuffer, who

issued a Report and Recommendation in which he recommended that the case be remanded to

the Administrative Law Judge (ALJ) for articulation of certain findings and further analysis.  The

Commissioner filed a timely Objection in support of her determination to uphold the ALJ's

decision.

      The Court in de novo review affirms the ALJ's decision in part, but remands the

case to the ALJ for findings and more analysis as to plaintiff's episodes of decompensation.  All

other parts of the Magistrate Judge's Report and Recommendation that are not objected to are

affirmed.

FACTUAL BACKGROUND

The Report and Recommendation provides a thorough and accurate statement of facts in this case. The Commissioner's Objections focus on the Magistrate Judge's analysis of steps three and four in the sequential analysis of disabilities. Because the Commissioner's Objections are directed at specific findings or recommendations, the Court is required to make de novo determinations concerning those matters. 28 U.S.C. § 636 (2005). The Commissioner's Objections relate only to the Magistrate Judge's analysis of steps three and four, so this Court will review those objections de novo.

REVIEW OF STEP THREE ANALYSIS

The Tenth Circuit has described the step three analysis as follows:

> At step three, the ALJ determines whether the claimant's impairment 'is equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity.'

*Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)(citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). In *Clifton*, the Tenth Circuit rejected the bare determination by the ALJ, stating that the ALJ "did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings." *Id.* at 1009. In spite of such an obvious deficiency in the analysis of step three, the Tenth Circuit has recognized that an ALJ's failure to make specific findings at step three may be harmless error, if the "ALJ's findings at other steps of the sequential process . . . provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." *Fischer-Ross v. Barnhart*, 431 F.3d. 729, 732-33 (10th Cir. 2005).

In the case at bar, the ALJ stated with reference to step three:

[S]ubpart "B" requires two criteria be marked restrictions or difficulties, and the medical record, and the Administrative Law Judge's *impression* of the claimant's mental impairment derived from claimant's appearance at the hearing is that the claimant *only has one marked limitation*, that being his inability to maintain concentration, persistence or pace. The other restrictions are only *mild to moderate*. (Emphasis added).

(R. 16). In the above statement the ALJ is referring to the functional areas that the ALJ is required to rate: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 416.920a(c)(4). All of these functional areas are rated on a five-point scale (none, mild, moderate, marked or extreme), except episodes of decompensation which is rated on a four-point scale (none, one or two, three, or four or more). *Id.*

The magistrate judge, in his analysis of the ALJ's statement, states that the ALJ only relied on his impression of the claimant at the hearing; that the ALJ did not articulate his reasons for concluding that plaintiff has only "mild to moderate" limitation in activities of daily living and social functioning; and that the ALJ did not rate the episodes of decompensation correctly.

In reviewing the government's objections de novo, the Court finds that the magistrate judge erred in his rejection of the ALJ's analysis of step three. In this regard, the Court finds that the ALJ's faulty analysis of step three is cured because step three is adequately discussed by the ALJ in other parts of his overall analysis.

ALJ's Impression of Plaintiff

It is manifest from a review of the record that the ALJ properly considered his "impression" of the plaintiff at the hearing, and that his impression was supported by the "medical record." It is clear to the Court that ALJ did not solely rely on the testimony presented

3

at the hearing, but combined his review of the medical record with his impression of the plaintiff throughout his decision. The ALJ specifically references opinions and evidence presented in the medical record to support his decision regarding the plaintiff's limitations in the areas of social functioning and activities of daily living.

Activities of Daily Living

The Court's de novo review of the ALJ's discussion in other parts of his decision reveals that he properly rated plaintiff's limitation in activities of daily living. Although the ALJ does not thoroughly discuss his reasoning at step three in his decision, his conclusion that plaintiff's functioning in those areas is "mild to moderately" limited, is supported by substantial evidence, including the medical record, which the ALJ discussed in some depth throughout the entire decision. As noted in the ALJ's Findings, activities of daily living include "adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 C. 1. In applying the regulations to his perception of plaintiff's activities, the ALJ stated that "claimant reported that he managed all of his own activities of daily living without assistance, including apartment cleaning, cooking, grocery shopping and his laundry. He also managed his own funds without difficulty." (R. 15). In addition, the ALJ found that plaintiff was able to appear in a timely manner for appointments and was able to appropriately respond to questions asked of him and to remain on task during examinations. (R. 17). The Court finds that a review of the record supports the ALJ's finding that plaintiff's functioning in the area of activities of daily living is "mild to moderately limited."

4

Social Functioning

        The regulations state that social functioning "refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 C. 2. "Social fuctioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." *Id.* The ALJ found that although plaintiff has had issues concerning getting angry or frustrated with people, such as his mom or supervisor, medication has helped him to calm down and that he is better able to function when taking his prescription medications. (R. at 17). The ALJ did note that plaintiff spends most of his time in his room or riding his bicycle and has no peer group to which he interacts. (R. 15). Plaintiff testified that he visits his mother and brother occasionally, and once a month he has a home teacher that comes to visit. (R. 50-51). Also, plaintiff is able to ride the bus to get to appointments, and that is how he arrived at the ALJ hearing. (R. 33).

        From the record it is clear that the ALJ considered all of the above in rendering his finding that plaintiff has "mild to moderate" limitations in the area of social functioning. The ALJ found that although plaintiff has limited social contacts he maintains relationships with his family, is able to function in society by communicating with bus drivers and doctors, and is able to do semi-social things like grocery shopping and going to the library.

        This Court finds de novo that the evidence contained in the record as a whole supports the ALJ's findings that plaintiff has "mild to moderate" limitations in the area of social functioning.

        The Court finds that the ALJ's analysis of plaintiff's limitations in the areas of

activities of daily living and social functioning are supported by substantial evidence.
Accordingly, this Court affirms those parts of the ALJ's decision, and respectfully rejects the
determination in the Report and Recommendation as to the aforesaid functional areas.

REVIEW OF STEP FOUR ANALYSIS

At step four, the magistrate judge found that the ALJ erred because he made
contradictory statements at steps three and four.  At step three the ALJ found that plaintiff had
*marked* limitation in his ability to maintain concentration, persistence, or pace.  Then, at step
four, the ALJ found that plaintiff retains *mild to moderate* residual mental functional capacity.
Due to these apparently contradictory findings the magistrate judge recommended that the
decision be remanded back to the ALJ to correct the inconsistency.

In the government's objection to the magistrate judge's Report and
Recommendation, it is stated that the ALJ's assessments at steps three and four are not
necessarily inconsistent, but they need only to be distinguished.  This is so because step three
assesses the severity of a mental impairment, while step four assesses the  mental residual
functional capacity.  On de novo review, it appears to the Court that the statements are not
contradictory.

In the step four analysis, the ALJ must complete the following three phases:

> In the *first phase*, the ALJ must evaluate a claimant's physical and mental
> residual functional capacity (RFC), and in the *second phase*, he must
> determine the physical and mental demands of the claimant's past relevant
> work.  In the *final phase*, the ALJ determines whether the claimant has the
> ability to meet the job demands found in phase two despite the mental
> and/or physical limitations found in phase one.  At each of these phases,
> the ALJ must make specific findings.

*Williams v. Barnhart*, 2006 WL 1109765, at *5 (10th Cir. 2006)(citing *Doyal v. Barnhart*, 331

F.3d 758, 760 (10th Cir. 2003)).

Residual functional capacity assessment is defined in the regulations as plaintiff's "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [plaintiff] can do in a work setting." 20 C.F.R. § 416.945. The residual functional capacity "is the most [plaintiff] can still do despite [his/her] limitations." *Id.*

The claimed error in the ALJ's reasoning has to do with the first phase of the analysis. At this phase the ALJ found that the plaintiff retains *mild to moderate* mental functional capacity limitations which were listed as:

> (1) the ability to carry out detailed instructions, (2) the ability to maintain attention and concentration for extended periods, (3) and the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (4) and the ability to interact appropriately with the general public . . . (5) the ability to set realistic goals or make plans independently of others.

(R. at 17). At step three of the analysis the ALJ stated that plaintiff had a *marked* limitation, i.e. "his inability to maintain concentration, persistence or pace." (R. at 16).

The government argues that the difference in the ratings nevertheless is correct because step three rates the severity of the mental impairment and step four rates the impairment based on its effect on performance at work. Also, the ALJ supports his opinion that plaintiff's mental residual functional capacity limitations are mild to moderate by stating that:

> [C]laimant was capable of focusing on a given problem. He could remain on task, and his responses were appropriate to the question asked him. He could copy a complex diagram, complete three of a three step command, and follow one and two step instructions, although with difficulty. He usually would require the instructions to be repeated twice for him to comprehend what was expected of him.

(R. at 17).

On de novo review, it is apparent to the Court that the ALJ correctly evaluated plaintiff's RFC. The evaluation used at steps two and three of the sequential process are "not an RFC assessment but are used to rate the severity of mental impairments." Social Security Ruling 96-8p (1996). "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment" to determine what an individual can do at work despite his or her limitations. *Id.*

In the case at bar, it is clear that the ALJ followed the proper process in his determination to find that plaintiff had a marked limitation in concentration, persistence or pace at step three. Also, in applying the more detailed RFC analysis to plaintiff in step four, the ALJ properly found that plaintiff is only mild to moderately limited in a working environment. The magistrate judge's recommendation was in error in his finding that the ALJ's different ratings of step three and step four were contradictory. Accordingly, concerning step four, the Court affirms the ALJ's determination.

### EPISODES OF DECOMPENSATION

The magistrate judge was correct in finding that the ALJ erred in incorrectly determining the episodes of decompensation from which the plaintiff suffered. The regulations state:

> Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, *maintaining social relationships, or maintaining concentration, persistence,* or pace.

> \* \* \* \*

Episodes of decompensation may be inferred from medical records

8

showing significant alteration in medication; or documentation of the need for a more structured psychological support system; or other relevant information in the record about the existence, severity, and duration of the episode.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 C. 4.

The regulations also state that episodes of decompensation should be rated on a four-point scale: none, one or two, three, four or more. 20 C.F.R. § 416.920a(c)(4).

In the case at bar, the ALJ did not rate plaintiff's episodes of decompensation according to the stated four-point scale. Rather, he rated that limitation as "mild to moderate." This error would be considered harmless error if other parts of the ALJ's discussion provided proper support for this rating. In this regard, however, the ALJ discusses only two episodes of decompensation, i.e. when plaintiff got very angry with his mother and yelled at her (but had never hit her), and a reported yelling episode where he got angry at a job site and walked off the job after becoming frustrated with some things. (R. 17).

Although the ALJ does discuss these two episodes, it is unclear from his decision how frequent these episodes were and if there were more occurrences that should have been considered to constitute episodes of decompensation.

A psychological report by Dr. Swaner discusses episodes of decompensation complained of by plaintiff by stating "he reports that he sleeps for extended periods of time, he misses appointments and assignments." (R. at 148). These episodes of decompensation presented in the medical record, and others which may exist, should be considered and cited by the ALJ in determining plaintiff's correct rating in this area.

The Court agrees with the magistrate judge's recommendation to remand this part of the ALJ's decision back to the ALJ. The ALJ should determine the appropriate rating of

plaintiff's episodes of decompensation, and in doing so should determine and make findings about the frequency of such episodes and set forth a factual basis for his determinations.

Based upon the foregoing, it is hereby

ORDERED, that the ALJ's decision is REVERSED and REMANDED for the sole purpose of determining the proper rating and further analysis and findings concerning episodes of decompensation; it is

FURTHER ORDERED, that all other parts of the ALJ's decision denying plaintiff's claims for Disability Insurance Benefits and Supplemental Security Income are AFFIRMED.

DATED this 5th day of September, 2006.

J. THOMAS GREENE
UNITED STATES DISTRICT JUDGE